UNITED STATES of America, Appellant,

v.

Frank FERNANDEZ and Sandra Fernandez, Appellees.

No. 92–1336–CIV–T–23C.

United States District Court, M.D. Florida, Tampa Division.

Feb. 2, 1994.

John L. Patrick, Jr., U.S. Attorney's Office, M.D.Fla., Tampa, FL, Mary Apostolakos Hervey, U.S. Dept. of Justice, Washington, DC, for appellant.

Dennis Jay Levine, Cramer, Haber, McDonald & LeVine, P.A., Tampa, FL, for appellees.

## *MEMORANDUM*

MORTON, Senior District Judge.

This case is before this court because of an award of damages against the United States as a result of sanctions imposed for violating the automatic stay provision of 11 U.S.C. § 362(c).

The Bankruptcy Judge's opinion states in part as follows:

### ORDER ON DEBTOR'S MOTION FOR ORDER OF CONTEMPT

This cause came on to be heard on January 11, 1991, upon Debtors' Motion for Order of Contempt against the Internal Revenue Service (IRS). The Court considers the Motion a motion for sanctions against the IRS pursuant to Title 11 U.S.C. § 362(h). The Debtors filed their Chapter 13 petition on July 25, 1990. The IRS had previously filed a Notice of Levy (pre-petition levy). On August 6, 1990, this Court gave notice of the bankruptcy to scheduled creditors, including the IRS. On August 15, 1990, the IRS filed another Notice of Levy (post-petition levy). The IRS admits receiving notice of the filing of the Chapter 13 petition on August 20, 1990, however, such notice was not placed into the IRS computer until September 10, 1990, because there is a three week lag time between the receipt of notice and the dissemination of that notice throughout the IRS.

The employer of one Debtor, Southwest Florida Water Management District, received the post-petition levy September 27, 1990, and forwarded Debtor's quarterly paycheck to the IRS. The IRS, contacted by Debtors' counsel on October 3, 1990, set the wheels in motion to release the funds which were returned to the Debtors on December 23, 1990. During this time the IRS filed a proof of claim less the amount of the levy ($420.00) and then filed an amended proof of claim putting the $420.00 back in their claim.

Unfortunately, the initial pre-petition levy has lain dormant like a mine in the sea of law. The pre-petition levy affected the Debtor's post-petition wages in December 1990. These post-petition wages in the amount of $2,300.00 were being held by another employer of one Debtor, the United States Coast and Geodetic Survey, for the IRS. However, the IRS has not yet obtained possession of those funds. Prior to the hearing in January 1991, Debtors' counsel once again notified the IRS of their post-petition levying, this time because of their pre-petition acts.

As to the post-petition levy, this Court finds that such a levy is a technical breach of the automatic stay. The IRS took the appropriate action upon receiving notice and returning the funds to the Debtors. However, through the bureaucracy of the IRS, Debtors were deprived of such funds almost 90 days. It is this Court's belief the IRS has the duty to ensure that its pre-petition or post-petition levies are not only neutralized upon notification of the bankruptcy, but the IRS must seek to turn over the funds seized quickly or seek adequate protection or relief from the automatic stay in the bankruptcy court. Here, the IRS sought to turn over the funds but did not move efficiently. If they have an efficient method of collection, they must have an efficient turnover mechanism to prevent sanctions under Section 362(h). This Court finds that 90 days to turn over $420.00 is intolerable, especially since the

IRS filed its proof of claim and amended it as to those seized funds within that time frame. Therefore, this Court finds the Debtors are entitled to 11% interest on the $420.00 from September 27, 1990, the date of levy, until the date of return of the funds, December 23, 1990.

As to the post-petition seizure of funds predicated on the pre-petition levy, the IRS has a duty to ensure such a levy does not function post-petition. There is no doubt in this case the IRS did deal with their post-petition levy while they disregarded the fact that they had a pre-petition levy in existence which continued to function almost six months later. Under the facts in this case, the Court finds a violation of automatic stay as to the operation of a pre-petition notice of levy and awards Debtors 11% interest from the date of seizure to the date of return of funds held by the U.S. Coast and Geodetic Survey plus attorney's fees

. . . .

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the IRS shall turn over all monies by February 1, 1991. It is further

ORDERED, ADJUDGED AND DE-CREED that this Court awards Debtors sanctions pursuant to Title 11 U.S.C. § 362(h) of 11% interest on all funds retained as set forth herein plus $1,000.00 in attorney's fees to be paid by March 1, 1991. Failure to return such funds or pay sanctions may be a basis for reduction of the IRS' claim or the award of further sanctions.

DONE AND ORDERED at Tampa, Florida on March 22, 1991.

S/ THOMAS E. BAYNES, JR.

U.S. Bankruptcy Judge

A judgment was entered in the sum of $5,194.25 as attorney fees and costs, including interest to debtors. Thereafter the U.S.A. filed an appeal asserting two errors: (1) That the violation of the automatic stay was corrected as soon as feasible, and (2) sovereign immunity from any award. The appeal was heard by a District Judge. 132 B.R. 775. That judge concluded as follows:

This Court has carefully reviewed the memorandum order of Judge Baynes, as well as the briefs of both parties. Under the standards quoted above, [Clearly erroneous standard of facts; de novo review of the law] it concludes that the findings of fact found within the order are not clearly erroneous. Further, it is found that the conclusions of law contained in Judge Baynes' order are sound. However, this Court feels that attorneys' fees were incorrectly awarded in that the record contains no proof of actual attorney's fees. Accordingly, the ruling of the Bankruptcy Court is affirmed, but the case is remanded to determine the amount of the attorneys' fees to be made according to the statutory requirements of Section 362(h) of the Bankruptcy Code. (Bracketed material added.)

Thereafter in the District Judge's opinion the question arose for the first time of whether the United States *willfully* violated the automatic stay. After raising the question of willfulness, the judge went off on a tangent and found that "it is apparent that Appellant's actions were a willful violation of the automatic stay." The District Court made this finding despite the prior finding by the Bankruptcy Judge that the violation was a technical one. On remand the Bankruptcy Judge awarded the sum of $3,587.05 in favor of the debtors, to be paid directly to debtors' counsel, and the Government timely appealed. It requests review of the case in view of *U.S. v. Nordic Village,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

■■ This court is troubled by the holding of the U.S. District Judge that the Government was willful in its action by reason of its failure to respond to the "automatic stay provision" more expeditiously. We are dealing with a sovereign government that is mammoth in size and, as such, cannot respond as expeditiously as an individual or corporation. Congress has recognized the cumbersomeness of the Government and its inability to respond to an emergency. For example, the Government is given 60 days to respond to a complaint filed in District Court as contrasted to 20 days for everyone else. The Government is given 6 months to investi-

gate claims under the Federal Tort Claims Act. In many instances, the Government must be given 60 days or more prior notice of an intent to sue. This court is deeply troubled that the United States is adjudicated a willful violator of the "automatic stay provision" when the United States responded, even if the response was slower than an individual's response might have been. However, the holding is that of a district judge, and this court, being of equal stature, will not disturb it.

 Turning to the second question, the raiding of the Treasury of the King (monarch or the sovereign government of the U.S.A.) the court looks to the holding in *Nordic Village,* for construing § 106(b) and (c), the court held:

> Neither § 106(c) nor any other provision of law establishes an unequivocal textual waiver of the Government's immunity from a bankruptcy trustees' claims for monetary relief. Since Congress has not empowered a bankruptcy court to order a recovery of money from the United States, the judgment of the Court of Appeals must be reversed.

*U.S. v. Nordic Village,* —— U.S. at ——, 112 S.Ct. at 1017, 117 L.Ed.2d at 191.

What we have in this case is a personal judgment against the USA for money damages payable to the bankrupt personally and not payable to the bankrupt's estate. It is a direct raid on the United States Treasury. Accordingly, the holding of the Bankruptcy Judge will be reversed.